# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\*\*\*

SAND CREEK PARTNERS, LTD, *et al.*,

    Plaintiffs,

vs.

AMERICAN FEDERAL SAVINGS AND LOAN ASSOCIATION OF COLORADO, *et al*.,

    Defendants.

Case No. 2:14–cv–444–GMN–VCF

**ORDER**

    This matter involves the Cadle Company's post-judgment execution proceeding against Larry Bortles. Three motions are before the court: (1) the Cadle Company's Motion for Aid (#16[1]); (2) the Cadle Company's Motion to Compel (#18); and (3) Larry Bortles' Motion to Vacate (#23). For the reasons stated below, the Cadle Company's Motion for Aid is granted, the Cadle Company's Motion to Compel is denied, and Larry Bortles' Motion to Vacate is denied.

## BACKGROUND

    In the 1980s, business partners Larry Bortles and William Bergman executed a construction loan agreement with American Federal Savings of the State of Colorado to build the Sand Creek Business Park in Commerce City, Colorado. Months into the project, American Federal Savings experienced capital shortfalls and stopped funding the Sand Creek Project. On April 13, 1989, Bortles and Bergman sued American Federal Savings in Adams County District Court and prevailed.

---

[1] Parenthetical citations refer to the court's docket.

1

This, however, did not end the matter. On April 27, 1989, American Federal Savings' receiver, the Federal Savings and Loan Insurance Corporation ("FSLIC"), substituted into the action as the real party in interest, removed the action to the United States District Court for the District of Colorado, set aside Bortles and Bergman's judgment under the *D'Oench Duhme* Doctrine, and filed counterclaims against the Bortles and Bergman.

The Resolution Trust Corporation ("RTC") then replaced the FSLIC under the newly enacted Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1441a, *et seq.*, and obtained two judgments against Bortles on the FSLIC's counterclaims. (*See* Judgments (#25) at 21, 24). On January 7, 1991, and August 25, 1992, the Honorable Jim R. Carrigan, U.S. District Judge for the District of Colorado, awarded RTC (1) $2,878,910.65 plus $742,002.39 in interest and late charges and (2) $954, 375.00 plus $18,213.00 in interest. (*Id.*)

Bortles refused to satisfy the RTC's judgments. Consequently, the lawsuit continued and parties came and went as RTC's judgments were assigned from creditor to creditor over the course of the next eight years. On September 29, 1995, RTC assigned the judgments to Premier Financial Services West, LP. On December 31, 1995, the RTC ceased operations pursuant to 12 U.S.C. § 1441a(m)(1), and the Federal Deposit Insurance Corporation ("FDIC") was named as its successor. On July 13, 1998, the Honorable John L. Kane, U.S. District Judge for the District of Colorado, substituted Premier Financial Services West, LP  for RTC and amended the caption. On December 16, 1999, the FDIC assigned RTC's judgment, again, to Premier Financial Services West, LP. Finally, on October 13, 1999, Premier Financial Services West, LP assigned the judgments to the Cadle Company, the current judgment creditor.

Ten more years passed, and the time to execute the judgments was expiring. Colorado Rule of Civil Procedure 54(h) provides that "[a] revived judgment must be entered within twenty years after the entry of the judgment which it revives, and may be enforced and made a lien in the same manner and for

like period as an original judgment." *See also* COLO. REV. STAT. § 13-52-102 (West) (providing for a twenty-year statute of limitations on judgments).

Accordingly, on December 9, 2010, nineteen years after the first judgment was entered, the Cadle Company moved to revive both judgments, arguing that it "is the successor in interest to the original [judgment creditor] in this matter, as evidenced by the appropriate Assignments of Judgment attached hereto." (*See* Doc. #25 at 15 ¶ 3). The court agreed. On January 20, 2011, the Honorable Craig B. Shaffer, U.S. Magistrate Judge for the District of Colorado, revived both judgments "*nunc pro tunc* to be effective January 7, 2011." (*See* Doc. #1 at 2).

Four months later, on April 20, 2011, the Cadle Company came to the District of Nevada, where Bortles now resides, to execute its judgments. (*See id.*) On March 21, 2014, the Cadle Company moved for a judgment-debtor exam. Three motions relating to the judgment-debtor exam are now before the court.

First, on August 12, 2014, the Cadle Company moved for aid regarding its writ of execution. (Doc. #16). During the judgment-debtor exam, Bortles testified that he is the owner of general partnership interests in two active limited partnerships: Fiji Marina Partners Limited Partnership and Fiji Pacific Partners Limited Partnership. (*Id.* at 1:24–28). Bortles further testified that one of the partnerships recently sold property it owned, the proceeds of which are being held by Bortles' attorney, Mitch Cobeaga, pending distribution by the general partner, Larry Bortles. (*Id.*) However, Bortles also testified that while he is the sole general partner of both partnerships, he owns "zero percent" interest in each limited partnership. (*Id.* at 2:23–25). The Cadle Company, therefore, seeks an order "requiring the surrender of the actual partnership interest, and all rights thereto." (*Id.* at 3:4–7).

Second, on August 27, 2014, the Cadle Company moved to compel. (Doc. #18). The motion requests an order compelling Bortles to (1) answer specific questions regarding the sale property and

location of the proceeds from the sale and (2) provide related supporting documents that evidence the sale and location of the proceeds. (*Id*. at 1:20–24).

Third, on December 19, 2014, Bortles filed a Motion to Vacate. (Doc. #25). Bortles contends that the various assignments of the judgments were flawed and, therefore, the District of Colorado's judgments must be vacated. (*See id*. at 1). This order follows.

## LEGAL STANDARD

"A money judgment is enforced by writ of execution. . . The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located. [. . .] In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." FED. R. CIV. P. 69(a)(1)–(2).

Rule 69 governs the execution of judgments. If the judgment creditor obtains a valid writ of execution, then the judgment creditor "may obtain discovery" to execute the judgment. *See id*. Discovery under Rule 69 is "quite permissive." *Republic of Argentina v. NML Capital, Ltd*., 134 S. Ct. 2250, 2254 (2014). It incorporates Rule 26, which provides for two forms of discovery: party-controlled discovery and court-controlled discovery. The first sentence of Rule 26(b)(1) governs party-controlled discovery. It provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). The second sentence of Rule 26(b)(1) governs court-controlled discovery. It provides that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."

These provisions provide for "[l]iberal discovery." *Seattle Times, Co. v. Rhinehart*, 467 U.S. 20, 34 (1984). Liberal discovery serves "the integrity and fairness of the judicial process by promoting the

4

search for the truth," *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993), and permits parties to "fish" for evidence. FED. R. CIV. P. 26(b), Advisory Comm. Notes (1946) (citation omitted) ("[T]he Rules . . . permit 'fishing' for evidence as they should."); *Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("[The] discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case.").

Where, as here, a party resists discovery, the requesting party may file a motion to compel. The party resisting discovery carries the heavy burden of showing why discovery should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). The resisting party must show that the discovery request is overly broad, unduly burdensome, irrelevant or disproportional in light of "the issues at stake." FED. R. CIV. P. 26(b)(2)(C); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 472–73 (9th Cir. 1992). To meet this burden, the resisting party must specifically detail the reasons why each request is improper. *Beckman, Indus.*, 966 F.2d at 476 ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."). Boilerplate, generalized objections are inadequate, tantamount to making no objection at all, and will be disregarded by the court. *Id*.

The court has broad discretion in controlling discovery, *see Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988), and in determining whether discovery is burdensome or oppressive. *Beckman, Indus.*, 966 F.2d at 476. The court may fashion any order which justice requires to protect a party or person from undue burden, oppression, or expense. *United States v. Columbia Board. Sys., Inc*., 666 F.2d 364, 369 (9th Cir. 1982) *cert. denied*, 457 U.S. 1118 (1982).

**DISCUSSION**

The parties' filings present three question: (1) whether the Cadle Company's judgments against Bortles were validly assigned to the Cadle Company; (2) whether the court should require Bortles to surrender his partnership interests in Fiji Marina Partners Limited Partnership and Fiji Pacific Partners

Limited Partnership; and (3) whether Bortles should be compelled to testify and produce documents regarding the sale of property formerly owned by Fiji Pacific Partners Limited Partnership. Each question is addressed below.

### I.     **Whether the Assignments were Valid**

The first issue before the court concerns the validity of the assignment of Cadle Company's judgments. (Doc. #25). Bortles argues that the assignments were invalid because "[i]n their submissions to [the U.S. District Court of the District of Colorado] to justify revival," the Cadle Company relied on two documents: (1) an assignment from the FDIC to Premier, dated December 16, 1999 and (2) an assignment from Premier to the Cadle Company, dated November 18, 1999, but "effective as of October 13, 1999." (*Id*. at 2–3). Because the second assignment predates the first assignment, Bortles moves the court to vacate the District of Colorado's judgments.

Bortles' motion is denied for two reasons. First, Bortles' argument relies on the wrong chain of assignments. On September 29, 1995, RTC assigned the judgments to Premier Financial Services West, LP. . On July 13, 1998, the Honorable John L. Kane, U.S. District Judge for the District of Colorado, substituted Premier Financial Services West, LP for RTC and amended the caption. And, on October 13, 1999, Premier Financial Services West, LP assigned the judgments to the Cadle Company. This created a valid chain of assignments from RTC to the Cadle Company, as recognized by Judge Shaffer's January 20, 2011, order.

Bortles' argument is mistaken because it relies on a duplicative assignment that is the product of 12 U.S.C. § 1441a(m)(1), which replaced the RTC with the FDIC. On December 31, 1995, the RTC ceased operations pursuant to 12 U.S.C. § 1441a(m)(1). Subsequently, on December 16, 1999, the FDIC assigned

RTC's judgment to Premier Financial Services West, LP. This assignment merely duplicated a previous assignment from RTC to Premier, which occurred on September 29, 1995.[2]

Second, Bortles' motion is denied because the District of Nevada cannot, as Bortles requests, invalidate a judgment entered by the District of Colorado. This request for relief is barred by the collateral attack doctrine, which "precludes litigants from collaterally attacking the judgments of other courts." *Rein v. Providian Fin. Corp.*, 270 F.3d 895, 902 (9th Cir. 2001) (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) ("We have made clear that [i]t is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decisions are to be respected.")). Even if the assignments were invalid, the arguments Bortles now asserts should have been raised in the District of Colorado within fourteen days of Judge Shaffer's January 20, 2011 order, which revived the judgments. *See* 28 U.S.C. § 636(b)(1)(B). Therefore, Bortles' Motion to Vacate is denied.

## II.   **Whether Bortles Should be Required to Surrender his Partnership Interests**

The court now turns to the parties' second question: whether Bortles should be required to surrender his partnership interests in two Hawaiian limited partnerships: Fiji Marina Partners Limited Partnership and Fiji Pacific Partners Limited Partnership. (Doc. #16).

Limited partnerships are a creature of statute, which are designed to permit a form of business enterprise in which persons can invest money without being personally liable for all partnership debts. *See, e.g.*, *Allen v. Amber Manor Apartments P'ship*, 420 N.E. 2d 440, 444 (1981). The fundamental

---

[2] In reply, Bortles abandons his argument that the chain of assignments were invalid. He then presents new arguments, contending that the court should nonetheless grant Bortles' requested relief because the Cadle Company presented "sloppy and inaccurate evidence to the Courts." (Reply #27 at 3). The court disagrees. Additionally, because this argument is waived because it was raised for the first time in reply. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

difference between the liability of general and limited partners is that general partners are responsible for the debts and obligations of the firm, without regard to the amounts contributed by them to the capital, while limited partners are not personally liable if they have substantially complied with the statutory provisions. *Id*.

The Cadle Company's request for a charging order is governed by Hawaii Revised Statute § 425E-703. It states, "[o]n application to a court of competent jurisdiction by any judgment creditor of a partner or transferee, the court may charge the transferable interest of the judgment debtor with payment of the unsatisfied amount of the judgment with interest." *Id*. The statute further provides that (1) "[a] charging order constitutes a lien on the judgment debtor's transferable interest," (2) "[a] transferable interest shall be personal property," (3) "the judgment creditor has only the rights of a transferee," not a manger or partner, and (4) "[t]he court may order a foreclosure upon the interest subject to the charging order at any time." HAW. REV. STAT. §§ 425E-701, 703.

Bortles contends that the Cadle Company is not entitled to a charging order for two reasons. First, Bortles asserts that the Cadle Company's request for a charging order is prohibited under Nevada Law. This argument is mistaken. Limited partnerships are generally governed by the law of the jurisdiction in which they were formed. See *Amber Manor Apartments P'ship*, 420 N.E. 2d 440, 444. Here, the limited partnerships agreements state that both limited partnerships were created "pursuant to the Uniform Limited Partnership Act of the State of Hawaii" and that "[t]he terms of the Agreement and the law of the State of Hawaii as from time to time existing shall, where applicable, exclusively govern the rights and obligations of the Partership and the Partners thereto." (*See* Docs. #16-2, #16-3 p. 1, § 21).

Second, Bortles contends that the Cadle Company is not entitled to a charging order because no property exists to charge against. For instance, during Bortles deposition, he repeatedly asserted that he is the general partner of both limited partnership but owns "zero percent interest" in either limited

8

partnership. (*See* Doc. #20 at 3:19–21). This argument is contradictory and unpersuasive. Bortles deposition testimony and both partnership agreements are unequivocal: they state that Bortles is the general partner of Fiji Marina Partners Limited Partnership and Fiji Pacific Partners Limited Partnership. This means that Bortles has an interest in both limited partnerships, which may be charged under section 425E-701.

Therefore, the Cadle Company's Motion for Aid is granted. The Cadle Company is granted a charging order against all of Bortles' transferable interests in Fiji Marina Partners Limited Partnership and Fiji Pacific Partners Limited Partnership, as permitted by Hawaii Revised Statute § 425E-701, *et seq*.

### III.     Whether Bortles Should be Compelled to Testify and Produce Documents

The parties' filings present a final issue: whether Bortles should be compelled to testify and produce documents regarding the sale of property formerly owned by Fiji Pacific Partners Limited Partnership. (Doc. #18). The Cadle Company's Motion to Compel is denied.

A facially valid motion to compel has two components. First, the motion must certify that the movant has "in good faith conferred or attempted to confer" with the party resisting discovery. FED. R. CIV. P. 37(a)(1); LR 26-7(b); *ShuffleMaster, Inc. v. Progressive Games, Inc*., 170 F.R.D. 166, 171 (D. Nev. 1996). Second, the motion must include a threshold showing that the information in controversy is relevant and discoverable under Rule 26. *See Hofer v. Mack Trucks, Inc*., 981 F.2d 377, 380 (8th Cir. 1992) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978)).

While the Cadle Company's motion satisfied the relevance component, it did not satisfy the statutorily required meet-and-confer component. As discussed by Magistrate Judge Johnston in *Shuffle Master*, a Rule 37's meet-and-confer requirement has two components: "First is the actual certification document. The certification must accurately and specifically convey to the court who, where, how, and when the respective parties attempted to personally resolve the discovery dispute. Second is the

performance, which also has two elements. The moving party performs, according to the federal rule, by certifying that he or she has (1) in good faith (2) conferred or attempted to confer." *Shuffle Master*, 170 F.R.D. at 170 (emphasis original).

The meet-and-confer requirement exist to clarify the nature of the dispute and prevent what occurred here. On August 27, 2014, the Cadle Company moved to compel, arguing that Bortles relevance and attorney-client privilege objections lack merit. On September 15, 2014, Bortles opposed on other grounds. Therefore, the parties are ordered to meet and confer by February 6, 2015. In the event that the parties' dispute cannot be resolved without court intervention, the Cadle Company is granted leave to file a renewed motion to compel by February 20, 2015.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that the Cadle Company's Motion for Aid (#16) is GRANTED. The Cadle Company is granted a charging order against Bortles' all transferable interests in Fiji Marina Partners Limited Partnership and Fiji Pacific Partners Limited Partnership, as permitted by Hawaii Revised Statute § 425E-701, *et seq*.

IT IS FURTHER ORDERED that the Cadle Company's Motion to Compel (#18) is DENIED.

IT IS FURTHER ORDERED that the parties must meet and confer by February 6, 2015. In the event that the parties' dispute cannot be resolved without court intervention, the Cadle Company is granted leave to file a renewed motion to compel by February 20, 2015.

IT IS FURTHER ORDERED that Larry Bortles' Motion to Vacate (#23) is DENIED.

IT IS SO ORDERED.

DATED this 26th day of January, 2015.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE